Good morning. Good morning, Judge Callahan, Judge Boddy, and Judge Koh. I am Yolanda Hwang. I represent the named plaintiffs and the class members in this case, and I would like to reserve three minutes for rebuttal. How many? Three. Three? Yes. Okay. The trial court found that the denial of sunlight as a condition of confinement is a violation of the named plaintiffs and class members' Fourteenth Amendment rights because the denial of sunlight increases all-cause mortality, and the named plaintiffs developed irreversible serious health problems, including hypertension, diabetes, severe headaches, migraines, myopia, and significant weight gain. And the trial court found that the causal factor for these illnesses was defendants' action in denying the named plaintiffs all access to sunlight. Let me ask you a question. You rely on community standards regarding outdoor exercise. Why is that relevant to access to sunlight when the evidence in the record shows that every pod has its own gym? The statute and the regs require outdoor access. They do not say that you are allowed to provide only indoor access. It specifically says outdoor. Now, that outdoor can be used for recreation. It could be used for exercise. It does not limit the purpose. But there is no statutory permission saying that you can only keep people indoors. And that's what the court found, that it was a requirement in the building code. It was a requirement in the state regs. And San Francisco The state regs also say both outdoor and covered and closed exercise areas for general population inmates, doesn't it? It's talking about exercise areas, correct? Well, but the building code specifically requires outdoor. It does not require indoors. They are they were they've been required for decades to have outdoors. And San Francisco purposely built one without that outdoor requirement. And that's the violation that we're talking about in terms of the code. Well, but then you're relying on the 1992 European Committee for the Prevention of Torture and Inhuman or Degrading Treatment or Punishment, the CPT report that talks about one hour of exercise. The 2020 CPT report you're also relying on talks about one hour's daily outdoor exercise and or time in the open air. We're using that as community standards to show that as Estelle versus Gamble outlined, that the community has a standard which is ever evolving. And as those standards evolved, which is also codified in the uniform building code that was adopted by the city and county of San Francisco. So the city and county of San Francisco agreed and adopted those standards and yet did not implement them when they constructed this building. They purposely built this building to exclude the possibility of outdoor exercise. OK, but this is a 1983, right? This is a 1983. All right. And it was up here one time before and it got sent back because it basically said you didn't have, you didn't have any evidence to support what happened. And so I'm looking now at the, and we're here right now on, we're reviewing what Judge Kim did. And so we're reviewing it for abuse of discretion, correct? You're viewing it for abuse of discretion and what is before the court are not the findings of fact, which are not disputed. There's been no appeal on the findings of fact specifically. Which is strange because the city spends a whole lot of its briefs saying how everything was wrong and then they say, go ahead and affirm the preliminary injunction. So I'm going to ask them about that there. But I don't see anything in the record establishing that a person needs one hour or even 15 minutes of sunlight per day. Don't you carry the burden to establish this fact? Well, we do and we've, and the record is clear. Dr. Seisler testified that sunlight has to be daily. He didn't waver from that, that it's daily access to sunlight. He testified that in his opinion, he has only ever denied people sunlight for three days of 45 minutes of access and that any more than that would be unreasonable and unethical for testing. He further testified that on point that the human need for sunlight is daily because the effects of sunlight on human skin only last for 24 hours. And when we went in afterward, after this to evaluate whether simply removing gratings on windows would suffice, the trial court found that simply having light through a window is not sufficient because there's not enough light directly on that. So we were able to show, yes, at the first appeal, we did not have the scientific fact. But at the trial, we had Dr. Seisler, who was the preeminent. Okay, so you have some evidence at the trial. But I didn't see any, Dr. Seisler doesn't say one hour, 15 minutes, or whatever. It's still all a little bit nebulous. And so part of what we're looking at, is there anything to tie any of this into the record? And the district court had a trial for what, five or seven days? How many days? Five days. Five days. Okay. Heard a lot of evidence. And so then we're reviewing for abuse of discretion. And the district court can also consider penological concerns, correct? Because if Dr. Seisler came in and said, yeah, it would be best if people were out two hours a day. And it would be best if they had X, Y, and Z. But they're in jail. So that wouldn't necessarily be a 1983 violation if you didn't get what was best for someone. So I'm trying to, the year, I can look at the one year and say, that might be tied to something because one of your plaintiffs started having problems that one year. But that plaintiff had a whole lot of other problems besides that. So it's not clear. You're not supposed to wait till people have problems before you address them. But there is something about a year. And I have no idea why these people are pre-detainees for 11 years. That seems quite incredible. But all of that. The judge heard five days of evidence and found some people not credible, found some people more credible. And the judge can pick and choose from certain things and call it together. So why isn't this one year and 15 minutes not an abuse of discretion? Because she gets to have her common sense, too. Well, I'd like to address the one year first. And I think Because you won, but you didn't win enough. That's what you're complaining about. What we're saying is that the one year denial is a clear violation of Hiling v. McKinley, which says that an inmate does not have to wait for relief until he develops So if we vacate this, let's just say we say that we can't tell exactly what the judge tethered it to. You could go back again and you could do worse, right? Be careful what you ask for. I understand that. What we're asking is that the one year is a violation that's an abuse of discretion. No, isn't that a factual finding? Why isn't that subject to clear error review? Because she applied the wrong legal standard. Let me just say, if what you're hearing is that some of the panel feels that you have not established either at what point the direct sunlight needs to be accessed and for how long, are you jeopardizing even what you got from the district court by asking for more? It appears that during the trial, you did attempt to get in through Dr. Seisler exactly how much time was necessary, but because it wasn't in the expert report, that line of questioning was precluded and foreclosed. We would say that that issue was briefed. We raised it in terms of our opposition to the in limine motion, and that if you look at the criteria, which is Okay, but there's nothing in the record that says exactly how much time is required per day. Dr. Seisler did say that the need for sunlight is daily. But that's different. Daily is not the same amount of time per day.  So that goes to the one year. Right. But if you need daily sunlight, you can't be denied for a year. You're objecting to two parts of this. Correct. The amount of time per day. Correct. And then the amount of time a person can be in pretrial detention before they are given access to sunlight. Correct. So the one year is clearly unsubstantiated. Well, she looked, it appeared to me that Judge Kim did a pretty careful analysis after a seven day trial and very extensive findings about the health conditions that were alleged, the time of onset, what would need to be done to allow people to have access to sunlight to avoid those potential health effects. But she had a really skimpy record presented in that Dr. Seisler couldn't say, did not say how much time per day they needed, nor how much time it would be a week, a month, two months, six months before some of these adverse health effects would be expected. He didn't he didn't tie them together. There's no testimony saying if you don't have sunlight for seven days, then you're going to have high blood pressure or you're going to gain weight. There's nothing like that. But we do know that at at minimum, the trial courts found that at six months, symptoms started to develop. And that was the testimony. Second of all, Dr. Seisler was unequivocal that you need daily sunlight and that he felt that more than three days' denial was inappropriate. Okay. Inappropriate, aspirational, you need sunlight. But that's not the same as saying if you do not have daily access to sunlight, you're going to develop adverse health effects. He testified that the sunlight was essential to the nitrous oxide in the skin and that the effect of sunlight on the skin in terms of high blood pressure only lasts 24 hours, which is why you need daily sunlight. Can I tell you, even in your own briefing, you have inconsistency in your opening brief at page 28. You say that plaintiffs' uncontradicted evidence at trial show that human beings require daily exposure to sunlight for one hour a day and that they should not be deprived for more than three days of that opportunity. So you're saying, you know, three days without it is okay. But then later you say all pretrial inmates housed at County Jail 3 be immediately provided with one hour per day of access to sunlight. That's on page 58 of the same brief. So there's a bit of inconsistency even in the same opening brief as to what is an amount of time that is acceptable for an inmate not to have direct sunlight. We would concede on the record that more than three days is considered unreasonable and that was Dr. Seisler's unequivocal and uncontradicted testimony. But how specific and detailed was his testimony? So if I spend a week in Seattle and it's overcast and I don't really get any sunlight, am I going to have adverse health effects? You could. And that was the testimony. Depending on the individual, he also testified that there are... You could. So it's very speculative and I'm struggling to see how we find an abuse of discretion in the scope of the injunction that the judge issued based on the testimony that was presented, that the evidence she had before her. Because she never discussed the first prong that's required in issuing an injunction on the needs, narrowness, and intrusive test. She never analyzed what was the need when she jumped to the one year and the 15 minutes. That's one thing. And the second thing is on the 15 minutes... How could she not have considered what was the need when the entire premise of the case was the need is access to sunlight? Because the standard that she articulates in her findings is de minimis. And de minimis comes from the PLRA 1997, talking about de minimis in a completely different context. She never cites any case. She doesn't discuss the law on the issue of need in coming up with her... So let me just go, let's go to the time, okay? So during the trial, you asked Dr. Seisler, in terms of your opinions in this case, do you have an opinion for how much outdoor sunlight objection beyond the scope of the report the Court sustained? The Court says that's it. He doesn't talk about the amount of time, Ms. Huang, so I'm sorry. It's not in the report. It's not in his opinions. It's not within the rules of the evidence to allow an expert witness to come up with an opinion, a new opinion at trial. So you're saying it's got to be one hour, it's got to be one hour, but I'm telling you, from looking at the record, I don't see that. Well, Your Honor, we would say that the error, that the legal error of excluding that opinion based upon Henry v. Gills is that a sanction must be just. If the Court is going to come up with one year and 15 minutes, it needs to have evidence in the record of why 15 minutes is appropriate, and there is nothing. So if the Court is going to come up— Right, and what I'm telling you is you could be jeopardizing even the 15 minutes by asking for more. It would— So let me ask you another unintended consequence question. In the record, there's evidence of staffing shortages and that they often lead to lockdowns and more limited time outside of an inmate's cell. So I don't know if that was because of COVID shortages, what the status is now, but it is possible that guaranteeing one hour a day for every single inmate could necessitate, if there are staff shortages, more lockdown, so people will have less time out of their cells. Your Honor— I want to respond to that point. Sometimes there are unintended consequences, and if you look at the statute, it does require a, you know, a balancing of the— Sorry, I had it a minute ago. Here it is. You know, you do have to consider the adverse impact on public safety or the operation of a criminal justice system caused by the relief, and has that balancing been done? What's in the record to say what the impact might be on all of the inmates if they have to do more lockdowns, to do one hour for every single detainee every single day, when at least the evidence in the record is that so many of them have no contact orders? So have you thought about that? Is there anything in the record to say, are there going to be more lockdowns? Are you going to have more people in their cell in order to guarantee this direct sunlight access? Your Honor, the Court found that because defendants set up the situation when they purposely built this jail in violation of the State regulations and the building code, that they created this problem. There's 2,000 acres out there that they could easily put in a yard. The footprint of the old yard still exists. Now, we're not telling the — because of the need-interference proportion, we're not saying you have to build a yard. But they could easily solve this problem by refurbishing the existing fence on the yard and making an outdoor space available. City and County of San Francisco chose not to comply with the code and with the regs. And so they created this problem. And they can therefore solve it. It's not that difficult to solve. The yard is right next to the jail. There's a catwalk that leads to it. It could be done. They can choose the method in which they are going to resolve this. So what remedy are you asking from us? Are you asking us to enter an order directing the city and the county to do what you're saying, refurbish the yard? I mean, are we in the first instance supposed to fashion the relief? We're asking that you remand this to the court with a finding that the one-year denial is an abuse of discretion and that the 15 minutes is an abuse of discretion and to ask the court to refashion the inappropriate remedy that actually addresses and corrects the constitutional violation. That's what we would ask. Well, if we vacate it, if we say it's not supported, then we vacate it and you're back to square one. You have no injunction, right? That's the procedural posture. It's not the one that I would choose. Well, but that's the way it would be. So if we vacate it, you have nothing. And you start over again and it could be a completely different one and it could be even worse. I mean, we can't tell the district court what to do. What we could say is it's not supported. The remedies are not supported. The findings of fact are not before you. And the findings would hold that denial of sunlight is a constitutional violation, a violation of the 14th Amendment. That's not been challenged. So all of those findings that the denial of sunlight is the causal factor in the ill health stance, the only thing we're challenging and the only thing before you are the remedies. And that's what would go back, not the findings of fact. All right. Do you want to save the balance of your time for rebuttal? Thank you. Okay. We'll hear from the city and county.  Good morning. Good morning. May it please the court. Caitlin Murphy for Appellee City and County of San Francisco. My opposing counsel began her argument telling you that the district court found there was an injury from a denial of sunlight. Respectfully, that's incorrect. The trial record after a seven-day bench trial found that San Francisco provided adequate out-of-cell time and exercise. But you did not cross appeal, correct? Correct. And in your brief, you are not challenging the district court's finding of a constitutional violation, correct? That's correct. I'm sorry. Let me ask my question and then I'll give you an opportunity to give a more fulsome answer. You are also not challenging the scope of the injunction as to the daily 15 minutes of sunlight requirement, correct? Correct. Okay. You are also not challenging that that 15 minutes is to be provided to all inmates or detainees, pardon me, who have been detained at CJ3 for more than one year, correct? Correct. Okay. Thank you. Go ahead, please. Which is really weird because you spend most of your brief talking about how everything was wrong, except for at the beginning you say we should affirm and at the end you say we should affirm. And so in the previous appeal in Norbert, we affirmed that the plaintiffs did not come forward with sufficient evidence to demonstrate that the lack of access to direct sunlight creates a medical risk for inmates. Are you conceding, and I think you said this, that plaintiffs have now presented sufficient evidence in this issue and that we can affirm that a person suffers harm or disability without daily access to sunlight? I don't think that's in dispute and so this Court doesn't need to address it. The City is requesting that the trial court's injunction be affirmed. The question on appeal is not a cross appeal, Your Honors are correct. The sole question on appeal is whether or not it was an abuse of discretion for the trial court to fail to issue the more expansive injunction that plaintiffs request. Had the City cross appealed, the question of whether or not the injunction, the scope that was set, was an abuse of discretion to issue an injunction that broad would have been before the Court. But because there is no cross appeal, the only question pending is whether or not. But so are you conceding that the plaintiff has now presented sufficient evidence on this issue and that we, that, and the issue was at the first time it said there was not sufficient evidence to demonstrate that a lack of access to direct sunlight creates a medical risk for inmates. You are now conceding that issue. They have presented enough?  And if I may clarify, the injury at issue after trial is different than the injury plaintiffs presented in the preliminary injunction. This is why I think the distinction between what the Court actually found, which was an injury based on a lack of access to direct sunlight, or what can sometimes be referred to as UV light on skin, is legally and materially different than what plaintiffs just presented, which was an argument about sunlight broadly. And if I can explain why. At trial, plaintiffs attempted to present three theories of injury. One was a disruption to their circadian rhythm. One was an increase in all-cause mortality or an all-cause increase. The third was psychological or mental health harm. The trial court record only found plaintiffs succeeded on the second, the increase in all-cause. Access to sunlight broadly, as opposed to access to UV light on the skin, is only relevant to a disruption to circadian rhythm. The pathway or the mechanism that the district court found, plaintiffs did not succeed on. The reason is that sunlight is one of the ways that a person's body can help regulate its circadian rhythm. Dr. Zeitzer with a Z, who's different from Dr. Seisler, testified that humans' internal clocks are slightly longer than 24 hours. That's out of sync with the 24-hour cycle of Earth. One way that our bodies keep that regulation is by noting the difference between day and night. Can I ask you, the magistrate judge found, as a matter of fact, that McAllister, one of the main plaintiffs, developed hypertension within six months of reincarceration after he was at San Quentin in 2015. So do you contest that factual finding? I think it's eight months. I think when you look at the trial transcript, we don't contest that factual finding. The reason we don't think it requires- Okay, well, what's in the record is eight months, nine months, ten months, at least in the record on appeal. But what's cited in the magistrate judge's opinion, we don't have that in the  We didn't find that in the record. Whatever was cited for six months. But the magistrate judge, the district court's order specifically says six months of incarceration. And are you contesting that six-month factual finding? I don't think the medical records support that. I also don't think it's material to whether or not the scope of the injunction needs to be modified. Well, whether it's eight months, nine months, ten months, or six months, that's less than one year. So why isn't it clear error to say no injury doesn't show up until you're one year in incarceration at CJ3 when there's clearly testimony that whether it's eight months, nine months, ten months, or six months, that it's less than one year? Sure. If I can give a two-part answer. The first is your question asked about whether or not it was clear error. I thought I heard my opposing counsel concede that the standard of review here is abuse of discretion. And that's the standard that the appeal should be considered under. Well- The scope of the injunction. But I disagree. Sure. I think factual findings are subject to clear error review. And I do think the scope of the injunction is subject to abuse of discretion review. I disagree with what counsel said. But go ahead. And it sounds like you agree with me on this standard, right? Factual findings are clear error. Scope of the injunction is abuse of discretion. Absolutely.  The answer based on the medical records at trial is that Dr. Seisler's testimony was that there is a link. There's a causation between these two. But not but for. Meaning he did not testify that but for a lack of access to UV light on skin, these individuals would still not suffer the same harms. There's evidence in the record that there are other contributing factors. So I think the weight gain is the easiest one to discuss. The period of discovery in this case covered COVID, where the record shows that people had limited out-of-cell time and limited exercise. It's unsurprising that during that period, people gained weight. Similarly, all three of the named plaintiffs through Dr. Rogers' testimony had substance use disorder issues, especially with, say, Mr. McAllister. OK. I understand you have causation challenges. Sure. But just looking at the district court's order as one unit, right, one contained universe. At one point, it says one of the three named plaintiffs developed these illnesses at six months. But then when it fashions the relief, it says, given the need for daily access to direct sunlight, the fact that plaintiffs began suffering from medical problems approximately a year after they were incarcerated. And the failure to identify the amount of time for daily exposure, the court rules,  Why isn't that clear error? It's not clear error because there are injuries that developed in the one-to-two-year range. So, for example, the nearsightedness of one of the three named plaintiffs that developed in the one-to-two years after the person's incarceration. So that's supporting the court's record. But I think the issue of causation is tied in here because the scope of an injunction can only be broad enough to remedy the harm that's actually shown. And so if there are alternative causations for the injuries that these individuals suffered, that necessarily limits the scope of the injunction that's appropriate with respect to UV rays. So let me see if I understand your argument. Your argument is, even if there was some evidence in the record that injuries from lack of access to direct sunlight, I acknowledge you disagree with the causation, is six months, it was not clear error for the district court to say. But I'm going to overall find that it was one year. Is that your point? Yes, for the reasons of causation, exactly. So where do we get the 15 minutes? That just sort of seems like it's just pulled out of nowhere. It's kind of like when we review attorney's fees and we say, oh, well, that just seems like too much. So I'm just going to cut it in half. Well, we don't, you know, that's what we call rough justice. So why isn't this just kind of rough justice and how do we tie it to anything? Respectfully, I think the question on appeal is slightly different. Had the city cross appealed, your honors would have to grapple with the question you just presented. What was the basis for the injunction actually issued? Because there's no cross appeal, the only question presented before you is whether or not it was either clear error or an abuse of discretion for the court to fail to issue the broader injunction plaintiff seek. And on that question, it's undisputed that there's nothing in the trial record to support the broader injunction plaintiff seek. And so for that reason, the trial court's order, the injunction should be affirmed. And you're basing that on Dr. Seisler's inability to say a specific amount of time that a person needs access to direct sunlight each day? I think it's based on a lack of absence in the record anywhere. One of those places is that Dr. Seisler doesn't address this. Neither does Dr. Zeitzer with a Z. Neither do community standards. As your honors pointed out, these intermix exercise, access to open air, they're they do not stand for the proposition for which plaintiffs presented them in their opening brief. Can we discern any basis for the 15 minutes that the district court selected? I think the language the district court used was recognizing the correct legal standard, which is 18 U.S.C. 3626 and Supreme Court precedent, for example, in Miller v. French, which are both cases that the district court cited. The district court understood the remedy needed to be broad enough to address the harm, but no broader, and that on the record presented before her, which had no testimony from an exporter otherwise as to what the time limit was, this was the most appropriate that she could come up with the record before her. But again, on appeal, I think the question is slightly different. It's not what was the basis for the injunction that was issued, which would be the question on a cross appeal. Here, it's was it clearly erroneous or an abuse of discretion to not issue a more expansive injunction? The answer there is certainly it was not. On that point, in Helling, the Supreme Court said, you know, if there are these life-threatening risks here, we shouldn't have to wait until the inmates actually suffer them. Why should we wait the one to two years until someone actually develops, or six months? Yeah, I think it's a two-part answer, if I may. So the one is, as we pointed out in our answering brief, Helling is in a different posture, and it did not address the scope of an injunction. Helling simply allowed that plaintiff to go to trial to attempt to prove their case. The second is, as this Court noted in Jones, which was a case subsequent to Helling, relying on the same type of argument. There, the Court found the plaintiff hadn't met their burden to proceed even as far as Helling did, because although it was a similar mechanism of injury, the facts there weren't sufficient to show causation. They weren't specific enough. That's exactly the case we find ourselves in here, because of the nature of all-cause mortality. By definition, it's a statistical likelihood in a population for something to happen in the future. And so, because of the nature of the injury we're working with, there's nothing inappropriate about the scope of what the Court did. It is consistent with this Court's precedent in both Helling and Jones. Well, I can see why you're not opposing it, because you practically have to do nothing. You get to wait a year, and then 15 minutes. Respectfully, I disagree. Okay, I'll listen. The second portion of the city's brief talked about the administrative and security concerns that come with offering something we didn't offer prior to this litigation. All of those are real. Certainly, the burden is substantially increased if plaintiffs get the relief that they're praying for on appeal. But there was— But your Deputy Sheriff's Association says it's going to increase safety. It's going to increase, you know, or reduce absenteeism from staff. It's going to foster better, calmer interactions. So, they're not expressing the concerns that you are about safety or practicality. And they're the ones that are on the ground. So are the city witnesses who testify to the security concerns. This isn't an attorney-made argument. This is supported by the testimony, for example, of Captain Tilton and Sheriff Miyamoto. The factual record for the city's support for the security and administrative concerns here are real, and they're documented in the trial court record. At that point, it becomes— But I thought that sheriff was actually—oh, I guess that was a different sheriff who actually was completely contradicting the city. Yes. It was a former sheriff who the trial court found was not credible, in part because of his bias against the city because of the way he was removed for office and misconduct that happened during his tenure. But what do you think about the Deputy Sheriff's Association position? Are they misinformed, or they— They simply have competing interests. So the — I respectfully suggest that the record shows the Deputy Sheriff's Association's interest is to create any circumstance where there would be an increase in funds or staffing for their members. That is different than the record testimony from trial from more managerial members of the sheriff's department who described the specific safety, administrative, and security concerns here. Well, I think there is some science out there in building jails that creating better environments sometimes makes happier prisoners, makes management better, and all of that. But it may be different than what's required in a 1983 situation. But are you making any changes out there now? Is there—or if this remains—if this—if we—hypothetically, if we were to affirm this injunction, are there things going on at that jail that are changing? So I can speak, for example, that there's some reference in the briefs to the annex, which is another building on County Jail 3's property. At the time of trial, that was not in use to house inmates. It currently is. And all of the kind of pods or dormitory-style rooms in that building have built-in outdoor access. Although this was not in existence at the time of the close-of-fact discovery, it had occurred before the time of trial, and it's in the trial record, that the jail also used catwalk areas to allow inmates to experience direct sunlight on their skin. And to the extent plaintiffs quibble with our impeachment— Well, one of the plaintiffs didn't want to go out on the catwalk, right? That's right. I kind of pictured on some—I'm trying to figure out what this looks like. It, you know, in some ways, it sort of makes me think of, like, the Walendas up on top of, like, a building, you know, fit. But I'm assuming you don't have to balance to go out on the catwalk. Correct. Yeah, it is at or very near to ground level. I don't know if there are any photographs of the area in the trial court record. So those are things that did not exist at the close-of-fact discovery that are happening at the jail post. Wasn't that described as something you have to stick your hand out through grading to get the direct sunlight? The trial court found that testimony not credible. You're specifically referencing Mr. Pute's explanation of what happened there. In the findings of fact and conclusions of law post-trial, the court found that portion of his testimony not credible. And that's a finding, a fact question, that plaintiffs haven't contested. Then what is in the record about the access to sunlight in the catwalk or the other option that was given to the other named plaintiff who said it was a cage? That is what's in the record, that there were spaces where the court found these individuals had access to be access to fresh air and sunlight, and that they declined that access. Admittedly, it happened after the close-of-fact discovery, but it was appropriate and admissible at trial to impeach those witnesses. What were, following up on Judge Callahan's questions, was there actually, I mean, the cage, the catwalk, they did not seem like they actually provided true direct sunlight access. You had to stick your hand through things and whatnot. That's a place where I disagree, that I believe the trial court found that portion of Mr. Pute's testimony not credible. And as to Mr. McAllister, respectfully, I understand that he calls the area a cage, but in a jail, which is a secured environment, any place where an inmate would be would have to be secured. And so the fact that there are boundary restrictions on either end, both isn't surprising and it doesn't change the reality of the fact that he had access to direct sunlight in that area and chose not to use it when it was offered. If I could just go back to one point plaintiffs made about, because I think this is very critical, the difference between direct sunlight and UV light on skin, that the portions of, for example, Dr. Seisler's testimony that plaintiffs referenced, all concerned sunlight broadly, not UV light on skin, which is the only piece that matters for the all-cause mortality that the court found. The reason you know this is that excerpt of record 1822 through 1823, he's referring to facilities, special facilities, shielded from external time cues, no clocks, no radios, no information sources as to the time of day. That's all relevant to whether or not someone has a disruption to their circadian rhythm. It is irrelevant to the only harm the district court found, which was an all-cause increase. And I would also instruct the court to look to the other portions of Dr. Seisler's testimony plaintiffs referenced. He consistently refers to sunlight, sunlight, sunlight broadly. He does not refer to, in the portions that reference an injury, an increase in all-cause mortality, which is the only injury connected to the UV light access that the trial court found as the injunction. Why is his testimony that you need access to sunlight daily not sufficient to create clear error in the district court's finding that or conclusion that the detainees could be offered access to sunlight after they were detained a year? The trial court correctly noted Dr. Seisler's testimony, and she correctly noted that he did not provide any information about when that daily access needed to begin. The reason that matters in the context of this case is that there are four separate times where plaintiffs prayed for relief that was a certain amount of outdoor access distributed over a week. So it didn't have to be every day. It could be in chunks throughout the week. That is what the trial court ordered. In other words, she required it to be daily, 15 minutes a day, not 30 minutes every two days. And in the context of plaintiff prior relief, the judge's interpretation of Dr. Seisler's testimony makes sense. And at the minimum, it was not clear error for her to interpret the fact she found that way. I just want to note in your opening, or I guess your answering brief, you say the district court applies the evidentiary record plaintiffs created and set an appropriate scope for injunctive relief. So from the city's perspective as the defendants, you don't think it would be appropriate for this court to say, look, I don't think there's enough in the record and indicate that something less than 15 minutes or inmates who've been or detainees who've been there greater than one year should be the scope of the injunction, correct? We are not asking for a remand. We're asking for an order that affirms the trial court injunction. If there are no further questions, I'll submit. There don't appear to be further questions. Thank you. I would like to address some of the issues that my friend on the city attorney's side brought up. And the court found, and this is on page 66 of the record, and she accepted Dr. Seisler's opinion that the lack of direct sunlight was a causal factor in high blood pressure, diabetes, myopia, and weight gain in the plaintiffs. So it's not just all-cause mortality. All-cause mortality is the end of the line. But before you get to the end of the line, you have these other illnesses. Now, in terms of the safety, I'd like to... Sheriff Miyamoto himself testified, and he testified that in his opinion, as a career person in incarceration, he agreed that being outdoors was beneficial to inmates. And he had no opposition to providing outdoor access to the inmates in his custody and control if he had the facilities. The problem was the city chose to build a jail that did not have those facilities, so he was hamstrung. It should be noted that every other jail and prison in California has that same requirement. San Quentin, which has a much higher security and safety requirement, provides outdoors. And the testimony in the record is that every other jail and facility in the Bay Area has outdoor access except San Francisco. So your opposing counsel said that that's changed, that there's a pod, and that it was within the record, I think, because it was used for impeachment, but there's an area that's now being used to house detainees that has outdoor access. I don't know the extent that it's being used. At the time that the trial ended, there was just one little courtyard, which is not enough for everybody, the 760 people in the jail. Well, they would never let 760 people out into a yard of any size at the same time. Correct. And whatever they had was too little. So we've not done discovery since the end of trial to see what exactly is going on. In terms of the catwalk, we did inspect the catwalk. And the problem with the catwalk is it has a roof. So you're not in the sunlight because you're under a covered area. And are the sides open? The sides have chain link fences. But because of the way that the catwalk, the roof extends, except if the sun is at a particular low point, you're not getting sunlight inside the catwalk. So the catwalk is in shade. And that was deemed inadequate. I would like to say that under Hyling, you don't have to wait. OK, you're a minute over your time right now. So let me find out if the judges have any questions. All right, they don't have any additional questions. So please wrap up in 30 seconds. I just want to say that there is no requirement that you wait until manifestation of illness before you are entitled to injunctive relief. And that is the issue and the remedy. Thank you. Thank you both for your argument. This matter will stand submitted. This court's in recess till tomorrow at 9 a.m. The United States Court of Appeals for the Ninth Circuit will now depart. This court in recess will stand adjourned.
judges: CALLAHAN, BADE, KOH